Next case is Jasper Oil Producers v. Dupo Oilfield Dev., Inc. That is 5-18-0026. Whenever you're ready. Good morning, Justices. My name is Jess Gillis. I work for Jasper Oil Producers. Good morning, Mr. Sullivan. If you may please support. This is an appeal based on a Edston Ford judge. Your name? Jess Gillis, sir. I'm sorry. I'm a little bit deaf, so I'm speaking too softly. Speak up a little. Okay, my apologies. It's still an unfortunate thing to have done this. We're asking for a judge not withstanding the verdict. And basically, we asked for Luke to amend post-trial. And all of the amendments that we sought were based upon the testimony and admissions of Ray Cole, Jr. There is no factual issue. There's no jury issue with regards to those matters. What we're asking is that the court allow us to amend as we asked Ed to bring his judgment. The facts of this case involve all of these. We are asking the court to add a totally new claim of equitable relief. There was nothing mentioned about that in the original complaint, the amended complaint or the third amended complaint. That is also correct. So the defendant had no way of preparing his case for such an allegation. That's not correct. Okay, tell me why that's not correct. Because we didn't want there to be prejudice to the defendant. No, of course not. But as the defendant admits in his brief, he admits that all of these facts were clearly present from the point in time of Mr. Cole's deposition. So they knew about these facts. They knew about these allegations. And, in fact, all of the facts that were stated are based on Mr. Cole's own admissions. So I don't know what he would defend or how he would defend it. Is he going to come to the court and say, wait a minute, I have this check for $25,000. Oh, after jury, I'm going to say I didn't have the check for $25,000? So, but I don't understand what you really want here. There's been a verdict. Yes. You want to amend after the verdict, and usually it's to conform the pleadings to what happened at trial. That's correct. But you lost. Well, what happened at trial is that Mr. Cole testified, and we're asking to conform to the proofs at trial. But if you had done that during trial when he testified, then you would have gotten instruction on the equitable claim. That is, okay, if you don't find a contract, you can't keep the $25,000. That's just unjust. That's correct. So what are we supposed to do? What are you supposed to do? Respectfully, I cannot say that. Respectfully, give a good, responsive question. What are you supposed to do is take Mr. Cole at his word? And this is the crux of the argument, and I understand what you're saying. If we accepted all the testimony of Mr. Cole, if the jury accepted everything that Mr. Cole said was true, what does that mean? He did testify. He received a check of $25,000. He received a check for the purchase of oil rigs. According to his testimony, he was supposed to transfer a $164 working interest to Mr. Shields. If the jury came back, if this was presented to the jury, and the jury came back and said, sorry, you lose, Mr. Shields, you lose Jasper Oil, we would be here nonetheless on a motion for judgment notwithstanding the verdict because everything that we're relying on is Mr. Cole's own admissions and own statements. But it seems to me that the only issue before the, or one of the big issues was the nature of the agreement, whether this was a working lease or not. That's correct, but that goes to the issue of whether there's a contract or not. Right. This motion doesn't deal with a contract issue. This deals with an unjust enrichment motion. I know, but in order to set aside the jury's verdict, right, that's what you want us to do. Yes. We have to agree that there was no contract. Well, the jury said there was no contract, and we're agreeing there was no contract. So we are asking to add. So now you're agreeing there's no contract. Well, that's what the jury found. We're not arguing that the jury didn't find that. The jury found there was no contract. The only way that you can assert that an unjust enrichment claim is in the absence of a contract. No, you can assert it originally in the alternative. Well, that's correct, but if you were to have a contract found, the unjust enrichment claim would not have gone. It's gone, right. It's gone. But the jury has given the option at trial. The jury has given the option at trial. But again, if the jury at trial had said there's no unjust enrichment, we would have filed the same judgment notwithstanding the verdict, and we would be with the exact same evidence, which would be Mr. Cole admitted he accepted the check, he took the check, bought the lease, received from that gross revenues of approximately $282,000. All of those things would have been the exact same. I agree with you, but I'm just wondering procedurally how we do this. We set aside a jury's verdict? No. No, we are judging notwithstanding the verdict based on the unjust enrichment claim. Well, a judgment notwithstanding the verdict would mean that the jury's decision was wrong. The jury's decision as to the counts that were there. How we do this procedurally is we allow the motion to conform to the pleadings as the purpose, and we enter judgment based on the new claiming. Who enters judgment? I'm sorry? Who enters the judgment? The trial should have entered the judgment. But now I just don't understand procedurally how we do this. Well, again, there's a step in it. See, you want us to set aside a judgment notwithstanding the verdict, even though you think that the verdict was correct as to whether there was a contract. The verdict is correct with regards to the contract, but we believe that the court should allow the amendment, and based on the evidence that was there presented, and, again, the rightmost claim of Mr. Cole, this affords procedurally, again, there's a statute that allows a motion to conform to the pleadings of the proofs, even after judgment. I agree with you, but now you want somebody to award you money. Who is that somebody? Again, that should have been done by the trial court. Well, there is a jury. Again, would there be a jury necessarily? Again, the facts that we're stating are only those that Mr. Cole stated. So if the jury had said, again, if the jury had said, here we have this complaint, we are not going to grant you judgment on this, the trial court would have been in the same position with regards to a genuine remotion because the facts are as Mr. Cole states them. No. The judge would have been allowed to submit to the jury a question of whether it was just or unjust for, what is it, DuPo to keep the $25,000. Then there would have been a finder of fact. Even if the finder of fact had said, wait a minute, it's just for DuPo to keep the money, we would ask for a judgment notwithstanding the verdict because it's still unjust. What is just about DuPo taking $25,000 to go buy a oil field and keeping the money? And the answer to that is absolutely nothing, of course. Well, I may agree with you, but under those circumstances, how do we get that in front of the jury or a trial court? Somebody asked for a jury trial. Yeah, I think we both are going to ask for a jury trial. So my question is, how do we get your issue before a jury now that the horse is out of the barn? Again, even if the horse is out of the barn, we can't go back and obviously get it in front of a jury. Right. Because we don't need to go get it in front of a jury. Why? Because the facts were stated by Mr. Cole. And again, if the finder of fact had said this was wrong or right, it would not have mattered in terms of the procedural posture of our motion. Okay. Counsel, let me ask you a question. Yes, sir. I'm looking at the appellee's brief, and it says that in your original complaint, that you did have a count three for unjust enrichment, and that in your subsequent pleadings, that count was dropped. Is that correct? That was done by prior counsel before I came on the case. We did that prior count three. Our amendment complaint, I believe it was a third amendment complaint, we did not include that. And part of the reason we didn't include that is because up until that point in time, there had been no assertion of a set-off of counterclaim by DUPO to those prior matters. And in the absence of them wanting to assert a counterclaim, we worked on and asserted these things. When we did get to trial, and at trial, DUPO then was allowed to assert a counterclaim. At trial. At that point in time, and all counterclaims at trial, no less. And the judge allowed them to assert. We then argued that the odd case, that by asserting that they break the statute of frauds, the judge then allowed them to withdraw their counterclaim, but then they were not allowed to present the counterclaim. So they were allowed to make a trial. Now, obviously, at that juncture, you know, it's coming back to us to start asserting things again at that point in time. Well, when they were allowed to amend, allege for the second time, a counterclaim? Yes, ma'am. What was that based on? Their counterclaim was based on a set-off. They were asking to assert that Mr. Cole had all these expenses in operating the field, and that these expenses, he should receive a set-off. But they exceeded the amount that he paid, and he was obligated to pay them. I don't know if it exceeded the amount that he was obligated to pay, but that he was at least a set-off in terms of the amount that he should receive. So, for instance, Mr. Cole, again, it's his idea. Did they do that in writing? I'm sorry? When they were finally, for the second time, allowed to assert the counterclaim, was it in writing? It was not in writing. It was a trial, and I actually objected to it. I asked the court the requirement to put it in writing, and they did not. And later on, this was at the initial stage. And then the next day during the trial, during Mr. Cole's testimony, they started to present evidence regarding the set-off in terms of the expenses. I objected. And the judge told them, if you're going to assert these, you are asserting a counterclaim. Mr. Cole was allowed to talk with his lawyer, and he only had to present those things. The judge did find, in an attempt to repeal that issue, that there was no assertion of a counterclaim. They didn't attempt to repeal it. They attempted to raise it in their brief, but there was no cross-appeal or any post-trial motions with regards to that. So it's clear that they were allowed to assert a counterclaim, even though it must have been in writing. Now, in terms of, to go back to your original question, sir, why we didn't assert it, well, we didn't assert it because they didn't assert these things. At trial, they asserted these things. Again, appointing, obviously, that catches us by surprise. It's very difficult to start on our part to assert additional claims and additional defenses when we get a trial. You could have, just as Kate had mentioned, you could have fled that in the alternative. We could have, yes, sir. But, again, we chose not to because, in fact, it did not appear that they were asserting those counterclaims. Well, let me ask you this. When you filed suit, you thought there was a valid contract. I mean, I didn't initially file a suit. Whoever did. Right. You amended the complaint. Right. That was the argument that there wasn't a valid contract out there. And the court said the statute of frauds applied. And when the court did that, what piece of paper was the court looking at that said, this is not a valid contract, that the statute of frauds applied? With regards to the initial appeal, I didn't have any of the trial level matters with those. It was after this matter was lost at that point that it came up on appeal and I handled the appeal. They were looking at the initial complaint, is my understanding, and they were looking at the motion to dismiss that had been filed. That was the paperwork they would have been considering at that point in time. Well, do you believe that one of the reasons we could reverse this case is that the court was incorrect on its application of the statute of frauds? Not physically, no. Because there had been no appeal raised with regards to the statute of frauds. The statute of frauds was removed, even though it was an immediate requirement, there was no cross-notice appeal or anything of that effect filed. So the only issue that you're asking us to look at is the motion to amend? I thought that you were also asking to have us rule on the denial of the motion to reconsider. Yeah, well, we're asking for all of the things that are listed in the brief, obviously. It's kind of difficult to keep all of them straight at the same moment. But, yes, we're asking the court to review the denial of the motion to reconsider, again, based on the fact that all of this is based on Mr. Pohl and Judy Pohl's own admissions. And wouldn't our standard of review on the judge's rulings on those matters be abuse of discretion? I believe it would be no, because, again, we're not looking at any issues of fact. Our position is very simple, looking at the Pohl statements and testimonies. So there is no issue of fact with regards to those. So I believe that that becomes a matter-of-law type of review standard. Can you cite a case to that effect? Well, at least I can settle that the standard of review should be. . . Well, it's different depending on the issues, right? You both agree that on a motion for judgment notwithstanding the verdict, it's de novo. At least in your brief. If I said that in the brief, that I agree that it's de novo, yes, that would be correct. But then on the motion to conform the pleadings to the proof, the defendant says it's abuse of discretion, and you say it's de novo. I still think it's de novo, because I think it's an issue of law. And, again, there's no . . . If the court allows the amendment? It would be an issue of law if the court should allow the amendment, because, again, this is not based on anything. . . This is not an actual question. So in terms of . . . Well, I've got to ask you what Justice Moore asked. Do you have a case that says when you look at the section allowing or disallowing amendment of the pleadings that it's de novo? Well, I look at the cases that we cite . . . Those are abuse of discretion. Well, I believe that we also said . . . I'm going to give him my apologies. No problem. And, again, we cited the people v. Linton, 46 Buick, probably at 547 Northeast 2nd, 748, which is along the Supreme Court. The Supreme Court decision also found it 127, 127 to 374. And, again, it says the only . . . The issue is whether a question of law is presented versus a question of fact. If there's a question of fact, obviously that is going to be de novo reviewed. There's no doubt on that. But here . . . This is on amendments of the pleadings. Everybody has a motion for the gentleman notwithstanding the verdict, but I think they still . . . Well, I think you both agree on de novo. But how about amendment of the pleadings? I think the amendment of the pleadings should also be de novo reviewed based on that same people v. Linton, 46 Buick. I think that that would be the same because, again, if there's ever a question of fact, there is not. How much do you think your client is owed based on this testimony? Based on this testimony, and he included it in the breakdown on page 12, I believe. Yes. The total amount of $2,482,246.32. That's the total lease. The 7-8 lease interest after the payment for the losses is taken out would be $2,171,965.53. Mr. Cole testified in Rodman 2 of the recorded proceedings, pages 55, 77, and 57, that his expenses were $576,500. Again, he clarified all of his expenses that happen to be listed. That would have left a net of $1,595,465.53. One-sixty-fourth interest of that, which would have been due to Jasper at the time of the trial, would have been $24,929.15. So with regards to that, I think it's pretty clear that the $24,000 that we just stated, $24,929, I believe it was, would be the amount as of trial that would have been due. If the court grants our constructive trust argument, which we believe is appropriate, then I think a remand would also be appropriate, because we would have continued more elements from the date of trial going forward. So your constructive trust argument, again, is an equitable argument. It is. It could have been pled at trial. It could have. And again, I'm wondering procedurally how we, I mean, basically you're starting over with two new theories. All the evidence is there. I mean, it's almost like you could just file his testimony in a new case, right? No, no. We can ask for a judgment. Excuse me, Your Honor, but we can file a motion to conform the pleadings to the proofs. There's a statute that allows for that. I understand, but if you would have gotten a judgment for $24,929.15, then you could have conformed the pleadings to that proof. And that would have validated the jury's findings. But now we've got to get a finder back to award you something, or else we have to start over. We don't have to start over, because, again, how can we start over as a practical matter? I don't know. No, no. I mean, you're asking the court to consider this. You're asking me to go through the issue. I know. Is Mr. Cole's testimony going to be different? No. Precisely. So we're not starting over. But what is the finder of fact? We've got to award you this money. The finder of fact will only be the jury. However, when there is evidence that supports these things, and the evidence is not able to be transferred, it's clear that the courts can, in fact, enter into a court with a judgment, notwithstanding the finding of the verdict. That was the jury. Thank you. Thank you, Your Honor. My name is Chad Sullivan, here on behalf of Dubo Oil. Good afternoon, Mr. McGill-Storer. They've pleased the court. Defendant's argument is that they do not like the outcome of the jury trial, and they want first the trial court and now this appellate court to supplant the jury trial's decision. And I think that's evident by what they did. You said the defendant. I'm sorry, the plaintiff. Yes, my apologies. The plaintiff. And I think what they don't argue makes that clear. We're here on a JNOB. They do not argue there are any improper evidentiary rulings. They do not argue there was any improper jury instructions. They don't argue anything improper was handled during the trial. They simply argue the jury's decision was not fair. And what they want is trial by appellate court. But the testimony that he describes, what was the name of the gentleman? Ray Cole. Ray Cole. Ray Cole does admit in his testimony that money is owed, and he does go through these expenses and things like that, and he does admit that he got a $25,000 check. So how do you reconcile that with what the jury did? Well, all the claims that they're wanting you to enter judgment on, the only reason they weren't heard by the jury is because they chose not to submit them to the jury. They don't claim there's any new evidence that came at trial. No, but my question is, Dupont is owed money. And you're saying that it's simply because of the way they've crafted their pleadings that they didn't get it, right? We would have tried a different case if those equitable claims would have been an issue. I suspect you would have. And as we said in our brief, wrongful conduct is a necessary element for unjust enrichment of quantum area. We would have talked about the interaction. Wrongful conduct meaning you withholding it. That Mr. Cole had to have some wrongful conduct. Not paying when he was supposed to. I don't know that that's necessarily wrongful conduct. But that was my point with your opposing counsel is that the case would have looked different, potentially. Absolutely. And you didn't have notice of that. That's correct. What about his claim that you inspected a counterclaim, an oral counterclaim? Well, we talked about that in the briefing a little bit. And the context of how this came up was on their motion in Lemonade prior to trial. They argued we could not submit expenses as exhibits. We had numerous exhibits that went to the expenses. They said we could only plead that or only enter those exhibits if there was a counterclaim for sale. We disagreed. We said there's an issue of fact regarding whether it's this carried working interest where you get gross profit or a working interest where you get net expenses. So as part of their claim of damages, we said, depending on which way the jury rules, these documents regarding expenses are relevant. We said they are necessary to be in a set-off counterclaim. We said that the alternative, without waiving our argument about the relevancy, the documents without a set-off counterclaim, we will amend to a claim of set-off. But really the key distinction on that amendment and the amendments they're proposing is when they occur. If he would have moved to amend his claims at that point prior to trial, we could have adjusted and tried the case that goes to those equitable claims. He only moved post-judgment. And the case law is clear on trying to move post-judgment. And reading from the Hassan case, it's been recognized a separate discretionary standard for allowing amendments after a final judgment. They cite the Mandel case. They say in that case, referring to Mandel, where a plaintiff filed a motion to amend his complaint after judgment, the court noted the courts consider certain factors in determining whether the court properly ruled on a motion to amend, such as whether the amendment could cure the defect of pleading, whether it caused prejudice, and whether it was timely. The court reasoned that a motion under Section 2616, which is what their motion to leave for amendment was filed under, is, quote, improper where, after judgment, the moving party seeks to add claims or causes of action that were available at the time of the original complaint. And, Judge, I think that goes to many of your questions, is they are trying to add new claims. We're not trying to, you know, take a verdict that was in their favor and amend their pleadings to match that verdict. We're trying to overturn the jury verdict and get a verdict or an award on claims that were never sought to be brought up until post-judgment. And they do not cite to any cases that allows for that post-judgment amendment. In their brief, they say they do. They cite to a Jablonski case, and they say that was a post-judgment amendment, but it wasn't. It was an amendment, and they stress it. They emphasize it, bold it, underline, say, after trial. And they did move to amend after submission of evidence. However, that count went to the verdict. The amendment was granted prior to it going to the jury. The jury is properly instructed upon it. And so the Jablonski case is far different. In this case where the jury never got to hear anything or be instructed at all on these equitable claims. Moreover, the Jablonski case has been reversed. The Lewandowski case also is a case where the amendment, the move to amend was prior to judgment being entered. So we're not aware of any case being cited in any of the briefings that allows for post-judgment amendment. And again, to the Hassan case, that court specifically talks about plaintiff's reliance on cross, which again was an amendment prior to judgment case. It's misplaced because in that case the moving party filed a motion to amend this complaint before a final judgment was entered. What was the issue that went to the jury, though? Was it whether or not, because they allege breach of contract. So the jury, I assume, was determining whether or not, I'm looking at the jury verdict. Was the contract between Jasper and Dupo clear and definite? No. Basically they thought there was no meeting of the minds between the parties and so no contract was formed. So the court did not, so the court allowed the question of contract despite the statute of frauds defense? Correct. Okay, so the statute of frauds defense isn't an issue. Correct. Let me ask you this. Do you think that a check can be a contract? I think it can be. I don't think it was in this particular case. Why not? It was signed by both of the parties. There was an amount, a definite amount. Two things. There was an amount on the check. However, there's a dispute whether that amount was for full payment of the interest in question. That's a question of fact to be decided as to the validity of the contract. But would you agree that if I tender you a check and you cash it, that we've at least established a contract where $25,000 has been exchanged? And I think there was a notation. Was there a notation on the check? There was. There was a notation on the check. And it says St. Clark County, Illinois, 132nd interest. And then it has, I guess, the section numbers of the property. Yeah. And that's why it doesn't satisfy the statute of frauds. Why not? Because that section number, I think if you take that legal description, it encompasses some 600 acres. But it clearly says a 132nd interest. But again, it doesn't say carry working interest. It doesn't say working interest. That is the dispute on how much is owed, right? No. The amount? Those are two separate interests. Exactly. Depending on the interest, the interest, whether it's working or carry, determines how much is owed under the contract. No, it's a description of what is being purchased, what is conveyed. Exactly. It's what's going to be, I'm going to give you $25,000 for a 132nd interest in an oil lease, right? That was clear in the check. Yes. I guess two points to try to answer your question, Judge. One, I don't think that issue is determinative in anything that we're here on appeal. But what we've argued in the past is that that check does not satisfy the statute of frauds. Why not? Because it is not clear enough in this document, in the foreclosure document, to let the parties know what is being conveyed. The case that I think they relied on was if a check's enough to say, you know, you can drive to it and know that's the property being conveyed. So if you had an address that said 123 Main Street, that's clearly what's being conveyed. There's an address. You can drive to 123 Main Street. By saying that's 600 and some acres, you're getting 132nd and some 600 acres. Well, that's not what the parties intend. Nobody's arguing that that's what they got. It was one particular oil field which was far smaller than that 600 acres that was described on the check. Well, but the requirement of a statute of frauds in a lease such as this is pretty minimal. Would you agree? I mean, it doesn't have to say whether it's a working interest or a carried interest under the statute of frauds. At least in the case one of you cite in your briefs. I think it has to be definitive enough that somebody can tell exactly what is being conveyed. Danieler, D-A-E-H-L-E-R versus Ogoian discussed the statute of frauds and what the lease has to convey, and it just has to be a memorandum, not some kind of formal written lease. It could be a check, I suppose. It has to be in writing and contain the names of the parties and a description of the property sufficient to identify it. The amount of the rent? Sufficient to identify it, about one quarter. So the one little piece there that talks about the, I guess, the section numbers is what you're saying. Even though we can't determine that by looking at it, it would need parole evidence in order to say it's 600 acres. You're saying that that check is not a valid contract. Because it doesn't accurately define what's being conveyed. It says 600 acres, so the parties agreed 600 acres were not being conveyed. Well, that's my point. I mean, the parties, there's no dispute as to that, so that's not an issue as to the interpretation of that check. The check conveys a 132nd interest. The dispute is beyond the four corners of the document as to whether it's a working or a carried interest. Yes? There's two issues. There's the interest. Is it carried or is it regular working? And then there's what exactly, what parcel of land, what interest in parcel of land is being conveyed? And that regular legal description isn't definitive enough to tell you what's being conveyed. Well, when I look at Instruction 15 and you ask, was the contract between Jasper Oil and Dupo Oil Fields clear and definite? I'm just wondering when the jury said no, why they would say no if there was a check that had the terms, unless you had to go beyond the check to look at the amount of the ground. I mean, clearly there was a 132nd interest in the lease. There was an expert witness that testified. I mean, everybody says that, 132nd interest. Well, but it's because they carried working interest as a separate and distinct property right from a working interest. And we had an expert witness that testified at trial, and he was presented with the evidence of, you know, if you were told, and I believe he was even handed the exhibit of the check, can you tell me what's being conveyed here because I have no idea. I couldn't tell you. I don't know if it's carried working interest or it's working interest. No, but he wasn't a party to the conversations either. It could have been a royalty interest. I know, but he wasn't a party to the conversations. Mr. Cole testified as to what was being conveyed. Right, and there's a clear dispute between the parties as to what was. And did Jasper Oil dispute what was being conveyed? Yeah, Jasper Oil said it was a carried working interest for $25,000. DuPro said it was a working interest for $40,000, which the $25,000 was just a down payment. One of my questions is, in instructing the jury, they instructed on specific performance. Was that because one of the counts in the, yeah, in count two, it asked for specific performance. I'm not so sure where this jury instruction came from. Is this an IPI instruction, 15th? I don't recall, Your Honor, and I'll confess since. Because it seems to me that you can have a contract that's not clear and definite and have testimony outside the terms of the contract, the memorandum as you're describing, and let the jury decide what the parties decided. They can either do that or they can say there was no meeting of the minds. But to say this, I don't know that that's, I'm just wondering if that's an IPI instruction. My last answer is I don't remember, Your Honor, and since it wasn't really part of the appeal and what the appellant was arguing, I haven't gone back and refreshed my recollection on that. Well, he's asking us to reconsider the motion to set aside the judgment, and if this instruction would be wrong, we could do that, right? No, because that instruction had nothing to do with the jury's verdict. They didn't get to that instruction. It says if your answer to question one is no, then your deliberations are complete. That's it. Over. I thought you were talking about the specific performance instruction. I am. The instruction, if you'll pardon me. Yeah. The thought was the one that rendered verdict was whether there was a meeting of the minds, whether the parties, did Jasper Oil prove there was a contract? No. Was the contract between Jasper Oil and Depot Oil Field clear and definite? That's the one I'm looking at. Okay. Are you sure whether that's an IPI instruction? I don't on what I have with me. I'm not so sure that that's the law, unless that's an IPI instruction. Because it says to the jury, if your answer is no, your deliberations are complete. I think that's one of the contract law on, you know, if there's not a meeting of the minds, then there is no contract. That's not what it says. The other thing I would say in response to that is, I don't know whether that's been raised on appeal. I'm not seeing any argument there. I know, but this court can use anything in the record in which to review the case, right? I understand IPI. The entire record. That's an advantage we have. It is, Your Honor, but you still have to... So what is your argument to that? I know that you're surprised by that, but I just... You still have to... They've said here in court, judicial admission, jury verdict was right that there's no contract. So I don't know that there's any going back on what the jury's verdict was that there is no contract. They haven't argued, and I think they've admitted it here in court. They're not appealing it. So I would submit that issue is done and gone. What the issue is, is whether or not they can now, post-judgment, amend the pleadings to have new causes of action ruled upon by this court. And we submit the case law decided. It makes that clear that they can't. It wasn't timely. This plaintiff waited over six years between when the breach of contract occurred, allegedly occurred, and finally sued. When they had three years with multiple amendments to the pleadings, that they could have brought this up. Again, there's no allegations of new evidence.  And to do it now would be prejudicial. And I submit the reason for that, at least I hypothesize, is that they didn't want to give the jury the opportunity to grant the lower amount, the $25,000 restitution, which would be the proper damages under an unjust enrichment claim. They argued in court that they were entitled to gross profits on this. That was their argument. In court, that's what they were seeking. They wanted gross profits on this oil field, which would have been, if I recall, tens of thousands of dollars and not hundreds of thousands of dollars. And I submit they made the choice that they wanted to gamble. They wanted to get the big payoff. And that's why they submitted and stayed with the breach of contract, the higher damage claim, in fears that if they presented the $25,000 option, that that's what they would have got. Well, let's suppose that we agree with you. Do you think that Jasper Oil can file a new lawsuit against DUPO now for constructive trust or the alternative unjust enrichment from the time of the trial forward? No. It would be time barred. Time barred. Why? Because all of this occurred. It's a five-year statute of limitations for claims of unjust enrichment. These events occurred in 2008 and 2009. No, I'm asking about from the time of trial forward. Is the field still working? I believe it was at the time of trial. I'm not as sure. Yeah, I'm just wondering if it's still working, if they could do that. Do you think they could? I don't. Okay. Thank you. Thank you. Thank you. I think there's something that has to be pointed out in response to something Mr. Balzano stated. They asked for Lincoln at trial, and that was blanketed. And I think it's pretty clear from what the Supreme Court has said, under the oil versus estimates roofing, the plaintiff, in that case, was asked to leave to amend, and the court said, well, if you've allowed the defendant so many times to amend, it's only fair to allow the plaintiff to amend. Particularly, again, near our trial, the motion eliminated that Mr. Sullivan refers to is immediately out of the room and the jury is waiting in the other room. It's not like they asked to leave to amend even a week or two before. I think it would be unfair to deny the plaintiff leave to amend under those circumstances. Justice, it asks several questions about the statute of frauds, and particularly whether or not this was a sufficient contract to check one. I think it's very clear that the statute of frauds, the only term it put up on the left open, might have been the legal description. However, Mr. Cole admitted at trial that this was for an interest in the larceny lease. The larceny lease was attached. The larceny lease was admitted into evidence. It contains a legal description. But you've admitted here that the contract was not at issue. I thought that's what your opening said. Well, no, the jury found there was no contract. That's correct. And you don't dispute the jury's verdict, is what you told us. Well, I did say that, and I still say that, but since you raised the issue, I wanted to make sure that it was clear in those regards. However, with regards to these amendments and things of this nature, it's clear that, again, I think that this is timely. I think that it's timely because, number one, we refer to a one-off case. We also look at the Truro case, which is also a Supreme Court decision, and there there are a lot of them, and they have a judgment. In that case, it was a subsequent judgment. Based on a lot of the motions before me, including some proofs, it's clear the motion that went as follows was very vague. I think it was fairly accurate in terms of timing in terms of our finding. There was some question as to whether somehow Mr. Cole was prejudiced by these things. And, again, an unjust enrichment argument. First of all, how would he be prejudiced? What could he have asserted differently that he wouldn't have asserted anyway? Number one, latches, for instance. He didn't raise latches in one of his original pleadings that was dismissed because there was no factual support in the pleadings with regards to that. They didn't ask to raise those things, and they didn't point those things out. You've hit on it exactly. If you now amend to an equitable claim, he gets to raise latches. Except for the fact that he tried to raise latches, and he didn't. But you didn't have an equitable claim on file, so it got dismissed. No, and that wasn't the basis for the dismissal. The basis for the dismissal was that there were no factual allegations supporting the latches claim. It was just a general thing saying, latches applied, so please dismiss. No, I understand, but perhaps he had not followed the pleading requirements in Illinois. Right, but in regards to that, when he says, well, now I'm prejudiced, no, he's not. He had the opportunity to raise latches. He knew it was that they had to be raised. He didn't have any evidence to support it. So, well, maybe they'll follow it. But then, given that he's being allowed to raise these things at trial, even, again, under written counterclaims and things of that nature, it's clear he's still going to raise that, and that would still apply with regards to the counterclaim or any other claim that was presented. So, with regards to that, there is no prejudice to him. He had his opportunity. He didn't take the bite. With regards to this evidence, though, this evidence is in, it was in at trial. And, again, even Mr. Cole was asked, why didn't you pay back the money? And he said, oh, I just didn't have the money to pay it back. That was what Mr. Cole stated, notwithstanding the fact that he would have, from his lease pocketed approximately, and this is, again, after payment of arsons and after payment of all his expenses, $1,396,000. You know, $1,396,000 and $32,000 approximately. I think that it's clearly a gratitude to relief, and I would ask the court to grant us the relief that we requested. Thank you both. The court will take the matter into consideration, and issue its ruling in due time. Court is adjourned until 1.30.